## UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CIT SMALL BUSINESS LENDING CORPORATION, | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| | : | 3:13-CV-886 (JCH) |
| v. | : | |
| | : | |
| CARL R. SAYERS, SUZANNE P. SAYERS,: | | SEPTEMBER 25, 2014 |
| CONNECTICUT DEPARTMENT OF | : | |
| REVENUE SERVICES, and JOHN DOE | : | |
| Nos. 1-100. | : | |
| Defendants. | : | |

**RULING RE: PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Doc. No. 47)**

## I.    INTRODUCTION

Before the court is the Motion for Summary Judgment filed by the plaintiff, CIT

Small Business Lending Corporation ("CIT"), ("Pl.'s Mot. Summ. J.") (Doc. No. 47),

seeking foreclosure on a mortgage it gave defendants.  Defendants Carl R. Sayers and

Suzanne P. Sayers (the "Sayers" or the "Borrowers") have filed an Opposition thereto

("Defs.' Mem. Opp'n") (Doc. No. 60).

CIT, in its Complaint ("Compl.") (Doc. No. 1), alleges two claims: (1) a default

under a commercial business note (the "Note") and mortgage (the "Mortgage") and (2) a

demand under a security agreement (the "Security Agreement"), against the Sayers.

Compl. at 7-10.  The Sayers raise four special defenses to their liability for the mortgage

foreclosure:  (1) statute of frauds and defective loan documents; (2) unclean hands; (3)

fraudulent inducement; and (4) breach of covenant of good faith and fair dealing.

Answer (Doc. No. 26) at 4-5; Defs.' Mem. Opp'n at 3-11.

CIT has submitted a Memorandum in Support of its Motion for Summary

Judgment ("Pl.'s Mem. Supp.") (Doc. No. 49), a Local Rule 56(a)(1) Statement ("Pl.'s

L.R. 56(a)(1) St.") (Doc. No. 48), and supporting documents, including copies of the Loan Agreement, Note, Mortgage, Security Agreement, Demand for Payment letter, and an affidavit by Elizabeth Mull, the attorney-in-fact for CIT and an Assistant Vice President at CIT Bank.  See Pl.'s L.R. 56(a)(1) St., Ex. Nos. 1, 3-6.  The Sayers have submitted an Opposition to Plaintiff's Motion for Summary Judgment with Incorporated Memorandum of Law, a Local Rule 56(a)(2) Statement ("Defs.' L.R. 56(a)(2) St.") (Doc. No. 61), and an Affidavit of defendant Carl Sayers ("Sayers Aff.") (Doc. No. 59-1).[1]

For the reasons set forth below, the court **GRANTS** CIT's Motion for Summary Judgment as to liability on the Mortgage and Security Agreement (Doc. No. 47) ("Pl.'s Mot. Summ. J.").

## II.    STANDARD OF REVIEW

A motion for summary judgment may be granted only when there are no issues of material fact in dispute and the moving party is therefore entitled to judgment as a matter of law.  See Fed. R. Civ. P. Rule 56(a); In re Dana Corp., 574 F.3d 129, 151 (2d Cir. 2009).  The burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. White v. ABCO Eng'g Corp., 221 F.3d 293, 300 (2d Cir. 2000).  Once the moving party has met its burden, the non-moving party must present evidence that would allow a reasonable jury to find in its favor in order to defeat the motion for summary judgment. Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).

When reviewing the record, the court resolves all ambiguities and draws all permissible factual inferences in favor of the party against whom summary judgment is

---

[1]    Defendant Suzanne Sayers has not submitted an affidavit.

sought, which, in this case, is the defendants.  Loeffler v. Staten Island Univ. Hosp., 582

F.3d 268, 274 (2d Cir. 2009).  If there is any evidence in the record on a material issue

from which a reasonable inference could be drawn in favor of the non-moving party,

summary judgment is inappropriate.  Sec. Ins. Co. of Hartford v. Old Dominion Freight

Line Inc., 391 F.3d 77, 83 (2d Cir. 2004).  However, the existence of a mere "scintilla" of

evidence supporting the defendants' position – in this case, their special defenses – is

insufficient to defeat a motion for summary judgment.  Harvey v. Homebound Mortg.,

Inc., 547 F.3d 158, 163 (2d Cir. 2008).

### III.   STATEMENT OF FACTS[2]

On or about July 27, 2006, CIT obtained an approval from the United States

Small Business Administration (the "SBA") to guarantee 75.00% of a loan in the amount

of $1,830,000 (the "Authorization"), an amount which CIT then lent to the Sayers.  The

first page of the Authorization provides, in bold-face type and capital letters, that the

Guarantee Fee is $48,968.75. See Pl.'s L.R. 56(a)(1) St., Ex. No. 1.

On July 31, 2006, the Sayers executed a Loan Agreement with CIT.  See Pl.'s

L.R. 56(a)(1) St., Ex. No. 2.  See Defs.' L.R. 56(a)(2) St. ¶ 7; see also Sayers Aff. ¶ 4.

This Loan Agreement states that, "[s]ubject to the terms and conditions of the

Authorization," among other conditions, CIT agrees to make the Loan to the Sayers.

Pl.'s L.R. 56(a)(1) St., Ex. No. 2 at 19.  Both Carl and Suzanne Sayers initialed on a line

to the left of the following statement:  "Borrower[s] certify that: 1. **Receipt of**

**Authorization** – Borrower and Operating Company have received a copy of the

---

[2]        Unless otherwise noted, these facts are undisputed in the parties' respective Local Rule
56(a) filings.  See Doc. Nos. 48 and 61.

Authorization for this Loan . . ."  Pl.'s L.R. 56(a)(1) St., Ex. No. 2 at 21.[3]  This

Authorization refers to the document executed between CIT and the SBA which

describes the Guarantee Fee to be in the amount of $48,968.75, as discussed above.

The Sayers dispute that all fees, including the Guarantee Fee, were accurately

disclosed to them by CIT prior to closing.  In his Affidavit, Carl Sayers states:

> [a]t the time of the closing, I was prepared to pay between $30,000 and
> $40,000 in closing costs.  However, the closing costs (including the
> working capital; Guarant[ee] Fee; legal fees; and soft costs incurred by
> Gorman, Enright & Butler, P.C.; and Frank J. Corigliano, Esq.) amounted
> to $117,411.12. . . . This amount was never discussed with me prior to
> closing.

Sayers Aff. ¶ 11.  Mr. Sayers goes on to state:

> [t]hough the Guarant[ee] Fee was presented to me as a fee that would
> provide security to the SBA that a certain portion of the loan is guaranteed
> in the event of future defaults, there is no evidence showing that amount
> had any legitimate security function or was even received by SBA.

Sayers Aff. ¶ 14.

Also on July 31, 2006, the Sayers executed a Small Business Administration

Note in favor of CIT for the principal amount of $1,830,000.000 (the "Note").  See Pl.'s

L.R. 56(a)(1) St., Ex. No. 3; Defs.' L.R. 56(a)(2) St. ¶ 11; Sayers Aff. ¶ 4.  To secure the

Note, the Sayers executed: (i) a mortgage in favor of CIT for the property located at 7,

9, and 13 Miry Brook Road, Danbury, Connecticut, 06810 (the "Mortgage" and the

---

[3]    The Sayers object to CIT's proposed material fact which states:  "The Borrowers indicated each warranty and/or representation that they were certifying by placing their initials next to each such warranty and/or representation."  Pl.'s L.R. 56(a)(1) St. ¶ 10.  The Sayers dispute this material fact by arguing that such a statement is a "legal interpretation and not a factual finding."  See Defs.' L.R. 56(a)(2) St. ¶ 10.  The court is not persuaded by the Sayers' argument.  Bold-type language found at the top of the same page indicates: "INSTRUCTIONS:  INDICATE THE PARAGRAPHS BEING CERTIFIED TO BY HAVING THE BORROWER INITIAL NEXT TO THE APPROPRIATE PARAGRAPHS, PRIOR TO SIGNING."  Pl.'s L.R. 56(a)(1) St., Ex. No. 2.  The Sayers do not contest that the initials are theirs and do not provide any other evidence that in any way contradicts CIT's statement of material fact.

"Mortgaged Property"),[4] and (ii) a Security Agreement in favor of CIT ("Security Agreement"). See Pl.'s L.R. 56(a)(1) St., Ex. Nos. 4 and 5; Sayers Aff. ¶ 5.  The Sayers dispute that the Mortgage was notarized in New York by Frank J. Corigliano, although Mr. Corigliano's State of New York notary stamp appears on the Mortgage document. See Pl.'s L.R. 56(a)(1) St., Ex. No. 4 at 36.  The Sayers also dispute that the Security Agreement was signed by Mr. Corigliano in New York. See Pl.'s L.R. 56(a)(1) St., Ex. No. 5 at  47.  The Sayers assert that both documents were signed and notarized in Connecticut, not New York.  See Sayers Aff. ¶ 8.

CIT asserts that, as part of the loan's closing, CIT prepared a Settlement Sheet, which set forth the fees associated with the closing, including the Guarantee Fee.  See Pl.'s L.R. 56(a)(1) St. ¶ 20 & Ex. No. 6; Mull Aff. ¶ 10.  Carl Sayers acknowledges that he was provided with the Settlement Sheet, but states that he "did not receive [it] before the closing," and that "[a]ny signature acknowledging receipt of the Settlement Sheet that Plaintiff purport[s] to be mine is invalid and unauthorized."  Sayers Aff. ¶ 6.

The parties also dispute whether or not a forbearance agreement between CIT and the Sayers was duly executed.  CIT asserts that, on January 13, 2011, the Sayers entered into a Forbearance Agreement with CIT which waived all of their affirmative defenses to payment of the Loan, but Mr. Sayers "den[ies] ever signing the Forbearance Agreement and dispute[s] that [the signature] is [his] valid, legal

---

[4]     The Sayers argue that the mortgage documents are defective because the mortgaged property is vague and, therefore, "defectively described."  Defs.' Mem. Opp'n at 2, 6.  The Sayers' Memorandum and Affidavit contain no statement regarding the accuracy of the property's address as listed on the mortgage; indeed, the Sayers fail to address whether this listed address is accurate.  See generally Sayers Aff; Defs.' Mem. Opp'n.  As such, there is no meaningful factual dispute with regard to the accuracy of the property's address.

signature." Sayers Aff. ¶ 10.  Given these disputed facts, the court has not considered the legal effect of the Forbearance Agreement in this Ruling.

A letter dated December 17, 2012, entitled "Demand for Payment," was sent to the Sayers notifying them that, due to their failure to remit payments since October 1, 2012, CIT demanded payment of the Loan in full by December 31, 2012.  Pl.'s L.R. 56(a)(1) St. ¶ 25; Mull Aff. ¶¶ 12, 13. The Sayers failed to make the payment as demanded.  Mull Aff. ¶ 14; Pl.'s L.R. 56(a)(1) St. ¶ 27; Defs.' L.R. 56(a)(2) St. ¶ 27.  CIT commenced this foreclosure action on June 19, 2013.

## IV.   DISCUSSION

### A.   <u>CIT Has Established a Prima Facie Case for a Mortgage Foreclosure</u>

In its Complaint, CIT alleges that the Sayers entered into a valid Note, agreed to pay all sums when due pursuant to the terms of that Note, have failed to honor their obligations, and are therefore in default for failure to pay.  Compl. ¶¶ 28, 29.  CIT seeks a judgment as to the liability of the Sayers as against CIT under the Mortgage and Security Agreement.[5]

#### 1.   Applicable Law

Connecticut follows the "title theory" of mortgages, which provides that the mortgagee holds legal title and the mortgagor holds equitable title to the property.  <u>See</u> <u>Barclays Bank of New York v. Ivler</u>, 20 Conn. App. 163, 166 (1989); <u>see</u> <u>also</u> <u>Stein v.</u>

---

[5]       In its Complaint, CIT "seeks a judgment of foreclosure against the Sayers as mortgagors under the Mortgage and an order directing the sale of Mortgage[d] Property."  Compl. ¶ 31.  In their Memorandum of Law accompanying their Motion for Summary Judgment, CIT asks the court  to "enter summary judgment as to liability in favor of the Plaintiff and conduct an inquest to determine the mortgage debt, enter a judgment of strict foreclosure and set law days."  Pl.'s Mem. Supp. at 20.  The court does not decide whether this foreclosure should proceed through the strict foreclosure or foreclosure by sale process at this juncture because there is an insufficient record to determine if strict foreclosure is appropriate.

Hillebrand, 240 Conn. 35, 43 n.7 (1997); Conference Ctr. Ltd. v. TRC, 189 Conn. 212, 218 (1983).  The mortgagors, the Sayers in this case, hold an equity of redemption, which provides them the right to redeem the legal title of the Mortgaged Property on the performance of certain conditions.  Barclays Bank of New York v. Ivler, 20 Conn. App. at 166.  "Generally, foreclosure means to cut off the equity of redemption, the equitable owner's right to redeem the property."  Nat'l City Mortg. Co. v. Stoecker, 92 Conn. App. 787, 793 (2006) (quoting Madison Hills Ltd. Partnership II v. Madison Hills, Inc., 35 Conn. App. 81, 90 (1994)).

"In a mortgage foreclosure action, [t]o make out its prima facie case, [the foreclosing party] [has] to prove by a preponderance of the evidence that it [is] the owner of the note and mortgage and that [the mortgagor has] defaulted on the note." Franklin Credit Mgmt. Corp. v. Nicholas, 73 Conn. App. 830, 838 (2002) (internal quotations omitted).  "[A] court may properly grant summary judgment as to liability in a foreclosure action if the complaint and supporting affidavits establish an undisputed prima facie case and the defendant fails to assert any legally sufficient special defense." GMAC Mortg., LLC v. Ford, 144 Conn. App. 165, 176 (2013).

        2.     Application

The Sayers do not contest that CIT is the owner of the Note and Mortgage nor do they contest that they defaulted on the Note by failing to make required payments. Indeed, the Sayers concede that CIT has met its prima facie case and that the court must only decide whether one of their special defenses applies.  See Defs.' Mem. Opp'n at 3.  CIT Small Business Lending Corporation is listed as the Lender, Mortgagor, or Secured Party in the Note, Mortgage, and Security Agreement.  See Pl.'s L.R. 56(a)(1)

St., Ex. Nos. 3-5. The court concludes that CIT has sufficiently demonstrated that there are no genuine issues of material fact as to the ownership of the Note, Mortgage, or Security Agreement and that, likewise, there are no facts that dispute the Sayers' default on the Note.  As such, CIT has made its prima facie case for mortgage foreclosure under Connecticut law and has proven the Sayers' liability as to the Security Agreement.

      B.    <u>Defendants' Special Defenses Are Inadequate as a Matter of Law</u>

The Sayers have raised four special defenses:  statute of frauds and defective loan documents; unclean hands; fraudulent inducement; and breach of covenant of good faith and fair dealing.

      1.    Applicable Law

"When a complaint and supporting affidavits establish an undisputed prima facie case for a foreclosure action, a court must only determine whether [a] special defense is legally sufficient before granting summary judgment."  <u>Bank of New York v. Conway</u>, 50 Conn. Supp. 189, 195 (2006) (quoting <u>LaSalle Nat'l Bank v. Shook</u>, No. 549266, 2000 WL 1022852, at *2 (Conn. Super. Ct. July 13, 2000) (internal quotations omitted)).

> The purpose of a special defense is to plead facts that are consistent with the allegations of the complaint but demonstrate, nonetheless, that the plaintiff has no cause of action. . . . A valid special defense at law to a foreclosure proceeding must be legally sufficient and address the making, validity or enforcement of the mortgage, the note or both. . . . Where the plaintiff's conduct is inequitable, a court may withhold foreclosure on equitable considerations and principles.

<u>Fidelity Bank v. Krenisky</u>, 72 Conn. App. 700, 705 (2002) (quoting <u>LaSalle Nat'l Bank v. Freshfield Meadows, LLC</u>, 69 Conn. App. 824, 833 (2002) (internal quotations omitted)).

"[S]pecial defenses which are not limited to the making, validity or enforcement of the

note or mortgage fail to assert any connection with the subject matter of the foreclosure action and as such do not arise out of the same transaction as the foreclosure action." E. Savings Bank, FSB v. Mara, No. CV054006305, 2006 WL 1738326, at *2 (Conn. Super. Ct. June 5, 2006); accord, Bank of New York v. Conway, 50 Conn. Supp. 189, 196 (2006).

> 2.    Statute of Frauds and Defective Loan Documents

In their first special defense, the Sayers argue that the Connecticut Statute of Frauds requires all conveyances of real property be attested to by two witnesses, that the notarial acknowledgement is inaccurate, and that "the Mortgage, Note, and Security Agreement are defective on their face due to the vague description of the subject property."  Defs.' Mem. Opp'n at 4-6.  CIT acknowledges that the Mortgage was only signed by one witness and, "for the purpose of this motion, CIT would concede that the acknowledgement is defective."  Pl.'s Mem. Supp. at 11.  However, CIT argues that Conn. Gen. Stat. § 47-36aa(a) (the "validating statute") cures the witness and notary defects as a matter of law.  The court agrees.

Both the notarial defect and the failure to have two witnesses sign the Mortgage can be cured by the validating statute and do not invalidate the Mortgage in a foreclosure proceeding if the validating statute applies.  See Ingomar Ltd. P'ship v. Packer, No. CV020467401, 2007 WL 1675846, at *7 (Conn. Supp. Ct. May 23, 2007) (holding that, in a mortgage foreclosure action, an improper notarial acknowledgement can be validated under Conn. Gen. Stat. § 47-36aa(a)); Thirteen, LLC v. Carney, No. CV085025071S, 2010 WL 2822376, at *4 (Conn. Supp. Ct. April 7, 2010) (holding that the validating statute applied to cure a failure to have two witnesses attest to a

mortgage in a foreclosure action when defendants failed to establish that a notice of lis pendens was recorded within two years of the recording of the deed).  Conn. Gen. Stat. § 47-36aa(a) ("Conveyancing defects") states:

> Any deed, mortgage . . . or other instrument made for the purpose of conveying, leasing, mortgaging or affecting any interest in real property in this state recorded after January 1, 1997, which instrument contains any one or more of the following defects or omissions is as valid as if it had been executed without the defect or omission unless an action challenging the validity of that instrument is commenced and a notice of lis pendens is recorded in the land records of the town or towns where the instrument is recorded within two years after the instrument is recorded:   (1) The instrument contains a defective acknowledgment or no acknowledgement; (2) The instrument is attested by one witness only or by no witnesses.

Even assuming that the Mortgage was filed a year after it was executed, the Sayers would have had to bring an action and file a notice of lis pendens in 2009 in order to avoid the application of the validating statute.  Here, the validating statute's provisions pertaining to defective or no notarial acknowledgement and one witness's signature apply to the Mortgage, because it was executed on July 31, 2006, and there is no argument or evidence that the Sayers have brought an action challenging the validity of the assignment or filed a notice of lis pendens.

The Sayers' argument that the validating statute is inapplicable when there are "allegations of forgery or fraud, as in the instant action" is unpersuasive due to the Sayers' failure to proffer any evidence of forgery or fraud relating to the notarial acknowledgement or witness' signature on the Note, Mortgage, or Security Agreement. <u>See</u> Defs.' Mem. Opp'n at 5.  The Sayers assert that "documents were executed fraudulently . . . [and] material terms were misstated," <u>id.</u>, but fail to discuss which documents or terms were fraudulent or misstated and how such statements would prevent the operation of the validating statute by citing and applying pertinent

Connecticut case law.  Instead, the Sayers cite three paragraphs of Carl Sayers' Affidavit at the end of the sentence containing the above quote.  These paragraphs of Carl Sayers' Affidavit refer to allegations of falsified signatures on the Forbearance Agreement and the alleged failure of CIT to provide the Settlement Sheet to the Sayers prior to the Mortgage's closing.  Because the Sayers do not cite Connecticut law for the proposition that the validating statute does not apply when a subsequent Forbearance Agreement is forged or when a Settlement Sheet is not provided prior to closing, and the court has not found case law to support such conclusions, the court rejects these arguments.

The Sayers also erroneously state that the "[p]laintiff merely refers to various instruments filed with the Danbury Town Clerk's Office" to describe the property subject to the Mortgage.  Defs.' Mem. Opp'n at 5.  While the Mortgage does cite a map prepared for the Estate of Senta Sayers that is filed with the Danbury Town Clerk's Office, the same page of the Mortgage lists the property's address as "7, 9 & 13 Miry Brook Road, Danbury, Connecticut."  Pl.'s L.R. 56(a)(1) St., Ex. No. 4.  Even if the Mortgage referred to a filed map without an accompanying address, Connecticut's validating statute considers this to be an "insubstantial defect," making the Mortgage "valid as if had been executed without the defect or omission."  <u>See</u> Conn. Gen. Stat. § 47-36aa(b)(3).

Based on the foregoing, the court grants CIT summary judgment on the Sayers' First Special Defense.

3.    Unclean Hands

"It is a fundamental principle of equity jurisprudence that for a complainant to show that he is entitled to the benefit of equity he must establish that he comes into court with clean hands. . . . The clean hands doctrine is applied not for the protection of the parties but for the protection of the court. . . . It is applied not by way of punishment but on considerations that make for the advancement of right and justice." Eldridge v. Eldridge, 244 Conn. 523, 536 (1998) (internal quotations omitted).  "The doctrine of unclean hands expresses the principle that where a plaintiff seeks equitable relief, he must show that his conduct has been fair, equitable and honest as to the particular controversy in issue. . . . Unless the plaintiff's conduct is of such a character as to be condemned and pronounced wrongful by honest and fair-minded people, the doctrine of unclean hands does not apply." Thompson v. Orcutt, 257 Conn. 301, 310 (2001) (quoting Bauer v. Waste Mgmt. of Conn., Inc., 239 Conn. 515, 525 (1996)).  The defense of unclean hands can be applied in a mortgage case when the plaintiff requires "the aid of [any] illegal transaction to make out his case." Id. at 311.  "In other words, the unclean hands defense is proper if the plaintiff would not be able to bring the action but for its improper conduct." LaSalle Bank Nat'l Ass'n v. Bardales, No. CV085007137, 2009 WL 1312509, at *7 (Conn. Super. Ct. April 14, 2009) (citing Thompson v. Orcutt, 257 Conn. at 313-14).

The Sayers argue that "[p]laintiff's forgery of [d]efendants' signatures on the Forbearance Agreement and disclosure of closing costs only after [d]efendants had already signed the loan documents amounts to unclean hands." Defs.' Mem. Opp'n at 8.  The court has assumed the facts in favor of the Sayers, the non-moving party in this

summary judgment motion and, as such, has rejected the Forbearance Agreement,

because Carl Sayers has attested that his signature on the document was falsified.  See

Sayers Aff. ¶ 10.  As such, the court rejects CIT's argument that the waiver of defenses

provision, as found in the Forbearance Agreement, is applicable in deciding this Motion.

This renders the Sayers' argument that CIT received the advantage of the waiver of

defenses provision moot.

> As to the closing costs issue, the Sayers assert that CIT's,

> disclosure of the true amount of closing costs to [d]efendants only after
> they had agreed to the loan documents financially benefited the
> individuals involved in the loan process . . . as well as CIT as a whole
> entity, particularly because [d]efendants would not have agreed to the loan
> had they known the true extent of the closing costs.

Defs.' Mem. Opp'n at 8.  In Carl Sayers' Affidavit, he states that, "[a]t the time of closing,

[he] was prepared to pay between $30,000 and $40,000 in closing costs" and that "[t]he

amount of $117,411.12 is far above what I expected to be charged in closing costs."

Sayers Aff. ¶ 11.  This higher amount included, according to Mr. Sayers, "working

capital; Guarant[ee] Fee; legal fee; and soft costs incurred by Gorman, Enright & Butler,

P.C.; and Frank J. Corigliano, Esq."  Sayers Aff. ¶ 11.  While Carl Sayers goes on to

state that the $117,411.12 sum "was never discussed with [him] prior to closing,"[6] he

admits that "the Guarant[ee] Fee was presented to [him] as a fee that would provide

security to the SBA."  Sayers Aff. ¶ 14.

---

[6]    The court notes that the Sayers do not assert that CIT violated any federal or state
disclosure requirements.

The Settlement Sheet, which Carl Sayers states that he received only after the closing,[7] is not a list of closing costs, but rather a list of the all of the disbursements made with loan proceeds, as evinced by the text describing the document and by the total listed amounts summing to $1,830,000.00, the exact amount the Sayers borrowed. See Pl.'s L.R. 56(a)(1) St. at 50-51.  The payees and amounts are as follows:

| Name of Payee | Date | Amount of Payment | Purpose |
|---|---|---|---|
| Newell Funding LLC | 7/31/2006 | $    1,712,588.88 | Payoff of Notes payable |
| Carl R. Sayers and Suzanne P. Sayers | 7/31/2006 | $        20,000.00 | Working Capital |
| CIT SBLC | 7/31/2006 | $        48,969.00[8] | SBA Guaranty Fee |
| Carl R. Sayers and Suzanne P. Sayers | 7/31/2006 | $        32,411.12 | Reimbursement for portion of legal fees incurred re: parent's estate/claims |
| Gorman, Enright & Butler, P.C. | 7/31/2006 | $          6,116.75 | Soft Costs |
| Frank J. Corigliano, Esq., Trustee | 7/31/2006 | $          9,914.25 | Soft Costs |
| **TOTAL** | | $    1,830,000.00 | |

To arrive at the amount of $117,411.12, which the Sayers claim are "closing costs," one must add all amounts not paid to Newell Funding LLC, including the two line items that were paid to the Sayers themselves in the amounts, respectively, of $20,000.00, for working capital, and $32,411.12, for legal fees incurred for a parent's estate.  The court can find no precedent – and the Sayers cite no support – for their assertion that their calculation of "closing costs" should include payments made directly

---

[7]     See Sayers Aff. ¶ 6.

[8]     The court notes that this amount, $48,969.00, differs by $0.25 from the $48,968.75 amount disclosed by CIT in the Authorization.  See Pl.'s L.R. 56(a)(1) St., Ex. No. 1.

to the Sayers for working capital and for legal fees incurred in a transaction which has

no expressed relationship to the Note, Mortgage or Security Agreement.  Indeed, other

Connecticut courts have separated closing costs from amounts paid directly to

defendants or have not included any amounts paid to defendants in discussing what

constitutes "closing costs" in foreclosure actions.  See, e.g., Cheshire Mortg. Service,

Inc. v. Montes, 223 Conn. 80, 103, n.29 (1992) ("We thus conclude that the principal

amount of the loan was $39,150 which included $27,070.05 to pay off the November,

1987 loan, $2,451.33 in closing costs and $9,628.62 paid directly to the defendants.");

Deutsche Bank Nat'l Trust Co. v. Belizaire, No. FSTCV065002704S, 2011 WL 3586487,

at *24 (Conn. Supp. Ct. July 13, 2011) ("The total of these closing costs paid . . . is as

follows:  Mortgage [b]roker [o]ther . . . ; [t]itle search and title insurance . . . ; [f]ees to

[l]ender . . . ; [f]ees for title examination and settlement or closing . . . ; [n]otary fee . . . ;

and [d]oc storage . . . .").

Without including the amounts paid to the Sayers themselves, the "closing costs"

total $65,000, which still includes the Guarantee Fee of $48,969.00 that Carl Sayers

acknowledges was "presented to him."[9]  Sayers Aff. ¶ 14.  Given that the Sayers do not

dispute that they initialed next to a line affirming that they received a copy of the

Authorization, which clearly contained a description of the amount of the Guarantee

Fee, CIT's failure to provide the Settlement Sheet at the closing does not defeat

summary judgment on the Sayers' unclean hands special defense.  Further, the amount

of closing costs, even including the Guarantee Fee, is $65,000, which is much closer to

---

[9]    The Sayers provide no evidence that the Guarantee Fee was not presented to them prior
to the closing, but rather assert, in the form of Carl Sayers's Affidavit, that the Settlement Sheet, which
they argue provides an "itemization of closing costs," was provided to them after the closing.

the estimate of "between $30,000 and $40,000 in closing costs" that Carl Sayers affirms

he was anticipating and much less than the $117,411.12, which figure the Sayers assert

as the basis for their unclean hands special defense.  Without the Guarantee Fee, the

closing costs are $16,031, an insufficient amount to maintain an unclean hands special

defense based on the Sayers' own expectation of closing costs.  Based on the

foregoing, the court grants CIT summary judgment on the Sayers' Second Special

Defense.

    4.  Fraudulent Inducement

 "Fraud is an equitable defense to a foreclosure action.  Fraud involves deception

practiced in order to induce another to act to her detriment, and which causes that

detrimental action. . . .   Actions of agents of a lender may also give rise to a defense of

fraud. . . .   However, a court, generally, will not invalidate a mortgage agreement against

the lender unless [it] in some way participated in or knew of the fraud."  FV-1, Inc. v.

Forgey, No. CV075002447, 2008 WL 2375835, at *3 (Conn. Supp. Ct. May 22, 2008).

"The four essential elements of fraud are (1) that a false representation of fact was

made; (2) that the party making the representation knew it to be false; (3) that the

representation was made to induce action by the other party; and (4) that the other party

did so act to her detriment."  Chase Manhattan Mortg. Corp. v. Machado, 83 Conn. App.

183, 188 (2004) (citing Carr v. Fleet Bank, 73 Conn. App. 593, 595 (2002)).[10]

---

[10]  The Sayers argue that they "intend to bring a claim for fraudulent inducement to sign the loan documents," not fraudulent misrepresentation, as they assert CIT incorrectly argued in its Memorandum of Law in Support of Summary Judgment.  However, CIT correctly stated that, "the Sayers . . . allege that they were fraudulently induced to sign the loan documents."  Pl.'s Mem. Supp. at 12; Answer ¶ 41.

"Because specific acts must be pleaded, the mere allegation that a fraud has been perpetrated is insufficient." Id.  Where the defendants in a foreclosure action have alleged that the plaintiff was a participant in the fraud, courts have permitted the special defense of fraudulent inducement.  FV-1, Inc. v. Forgey, 2008 WL 2375835 at *3 ; U.S. Bank Nat'l Ass'n. v. Reynoso, No. CV0705004312, 2008 WL 3307124, at *1 (Conn. Supp. Ct. July 17, 2008).  "However, in cases where the defendant failed to allege that the plaintiff was either aware of, or a participant in, a fraudulent loan transaction, courts have stricken fraudulent inducement special defenses." PHH Mortgage Corp. v. Traylor, No. 0705004315, 2008 WL 5156457, at *3 (Conn. Super. Ct. November 13, 2008).

"The general rule is that where a person of mature years and who can read and write, signs or accepts a formal written contract affecting his pecuniary interests, it is [that person's] duty to read it and notice of its contents will be imputed to [that person] if he negligently fails to do so; but this rule is subject to qualifications, including intervention of fraud or artifice, or mistake not due to negligence, and applies only if nothing has been said or done to mislead the person sought to be charged or to put a [person] of reasonable business prudence off . . . guard in the matter." First Charter Nat'l Bank v. Ross, 29 Conn. App. 667, 671 (1992) (citing Ursini v. Goldman, 118 Conn. 554, 562 (1934)).

In their Memorandum in Opposition to Plaintiff's Motion for Summary Judgment, the Sayers argue that "the false statement consisted of a misrepresentation of the amount of closing charges that would be applied." Defs.' Mem. Opp'n at 9.  To support this statement, the Sayers cite the forty-first paragraph of their Answer, which states:

> Defendants were fraudulently induced to sign the loan documents. Plaintiff falsely misrepresented the closing charges and failed to disclose conflicts

17

of interest between it and Defendants' then counsel in order to induce
Defendants to enter into a loan transaction with Plaintiff. Plaintiff's actions
did induce Defendants to enter into the purported loan transaction.

Answer ¶ 41.

Outside of this bare reference, which refers to two different bases, the Sayers do
not argue that the failure to disclose a conflict of interest provides a basis for their
fraudulent inducement claim in their Memorandum in Opposition.  CIT challenged this
basis for a fraudulent inducement claim in their Memorandum of Law in Support of
Summary Judgment.[11]  See Pl.'s Mem. Supp. at 15-16.  Thus, the Sayers knew that the
failure to disclose a conflict of interest was a challenged basis for their fraudulent
inducement claim and nevertheless chose not to address it.  As such, the court
considers the Sayers to have abandoned this theory of fraudulent inducement.[12]  Cf.
Jackson v. Fed. Exp., 12-1475-CV, 2014 WL 4412333, at *5 (2d Cir. Sept. 9, 2014) ("[A]
partial opposition may imply an abandonment of some claims or defenses.  Generally,
but perhaps not always, a partial response reflects a decision by a party's attorney to
pursue some claims or defenses and to abandon others.").

The Sayers cite no evidence, outside of the bare assertions contained in their
Answer, to support their contention that there is a genuine issue of material fact as to
whether there was a false misrepresentation made concerning the amount of closing

---

[11]    The only false statement the Sayers argue in their Memorandum in Opposition,
"consist[s] of a misrepresentation of the amount of closing charges that would be applied."  Defs.' Mem.
Opp'n at 9.

[12]    The court does consider the conflict of interest issue in its analysis of the Sayers' Breach
of Covenant of Good Faith and Fair Dealing defense.

costs.[13]  In opposing a summary judgment motion, when plaintiff has challenged

defendants' factual allegations with documentary evidence, as has occurred in this

case, "[m]ere assertions of fact . . . are insufficient to establish the existence of a

material fact."  Wells Fargo Bank, N.A. v. Strong, 149 Conn. App. 384, 397 (2014)

(citation omitted).  Based on the foregoing, the court grants CIT summary judgment on

the Sayers' Third Special Defense.

    5.   Breach of Covenant of Good Faith and Fair Dealing

  "Good faith performance or enforcement of a contract emphasizes faithfulness to

an agreed common purpose and consistency with the justified expectations of the other

party . . . .  Essentially it is a rule of construction designed to fulfill the reasonable

expectations of the contracting parties as they presumably intended.  The principle,

therefore, cannot be applied to achieve a result contrary to the clearly expressed terms

of a contract, unless, possibly, those terms are contrary to public policy."  Magnan v.

Anaconda Industries, Inc., 193 Conn. 558, 567 (1984) (internal citations and quotations

omitted).

  The Sayers assert that CIT breached the covenant of good faith and fair dealing

by failing to disclose the conflict of interest between CIT's employee and the Sayers'

counsel.  Answer  ¶ 39.  In support of this claim, the Sayers point to Carl Sayers's

---

   [13]   Further, the first element of fraudulent inducement – that a false representation of fact was made – is not supported by any of Carl Sayers's affirmations.  In contrast, Carl Sayers's Affidavit states that the alleged closing costs of $117,411.12 were "never discussed with me prior to closing." Sayers Aff. ¶ 11.  Rather than connoting a false representation, this language indicates a failure to make a representation of accurate closing costs.  The Sayers cite no case law to support a fraudulent inducement claim for such a failure to act in this situation, and they fail to provide any other context regarding CIT's failure to disclose closing costs that would create an issue of material fact with regard to the first element of the fraudulent inducement claim.  In other words, "concealment of facts supports a cause of action for fraud only if the non-disclosing party has a duty to disclose."  Remington Rand Corp. v. Amsterdam-Rotterdam Bank, N.V., 68 F.3d 1478, 1483 (2d Cir. 1995).  CIT had no such duty.  See infra Part IV.B.5.

Affidavit, which states that, "[b]efore the closing, CIT failed to disclose that its Senior

Regional Account Manager was related to Defendants' then-counsel" and that "[h]ad

[Carl] known of the improper relationship between my then-counsel and CIT, [he] would

not have entered into a contract with CIT."  Sayers Aff. ¶¶ 15-16.  The Sayers argue that

CIT had a duty to disclose this alleged conflict of interest "where the parties enjoy a

fiduciary relationship . . . [or] . . . where one party possesses superior knowledge, not

readily available to the other, and knows that the other is acting on the basis of

mistaken knowledge." Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, N.A., 731

F.2d 112, 123 (2d Cir. 1984) (citations omitted).

While the Sayers acknowledge that there is generally no fiduciary relationship

between a lendor and a lendee, Defs.' Mem. Opp'n at 10, they point out that "[a] bank,

as a mortgagee lender, may be the fiduciary of the mortgagor borrower when the bank

becomes the borrower's financial advisor."  Southbridge Associates, LLC v. Garofalo, 53

Conn. App. 11, 18 (1999) (citation omitted).  However, the Sayers have provided no

evidence that CIT served as their financial advisor.

The Sayers also argue that "[p]laintiff was in possession of superior knowledge

that [p]laintiff's Senior Regional Account Manager was related to [d]efendants' then-

counsel" and that this knowledge "was not readily available to [d]efendants." [14]  Defs.'

Mem. Opp'n at 10.  This statement is, likewise, unsupported.  Carl Sayers's Affidavit

merely recites that CIT failed to disclose the conflict; it does not provide evidence that

---

[14]    Given that the Sayers' counsel is one of the people upon which this purported conflict of
interest is founded, it strains credulity that CIT was in possession of superior knowledge, particularly
because there is no evidence that the other party constituting the conflict of interest was involved in this
Mortgage transaction whatsoever.  However, for the purposes of this Ruling, the court does not reach
whether knowledge by the Sayers' attorney of a conflict is sufficient to prevent a claim for breach of the
covenant of good faith and fair dealing in this instance.

would create a genuine issue of material fact regarding CIT's supposed superior knowledge.  It lacks even an assertion that the Senior Regional Account Manager was in any way directly or indirectly involved with this Note or Mortgage transaction.  Based on the foregoing, the court grants CIT summary judgment on the Sayers' Fourth Special Defense.

**V.      CONCLUSION**

For the foregoing reasons, the plaintiff's Motion for Summary Judgment (Doc. No. 47) is **GRANTED** as to liability on the Mortgage and Security Agreement.  The court directs the parties to confer, and to attempt to agree, on appropriate foreclosure procedures, and to file their suggested future course of action before October 15, 2014.

**SO ORDERED.**

Dated at New Haven, Connecticut this September 25, 2014.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge